174 So.2d 91 (1965)
Sam SILVER, Appellant,
v.
STATE of Florida, Appellee.
No. F-302.
District Court of Appeal of Florida. First District.
March 16, 1965.
Rehearing Denied May 4, 1965.
*92 Albert Datz, Jacksonville, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
STURGIS, Chief Judge.
Sam Silver, the appellant, was tried by jury and convicted of grand larceny in one of its several forms prescribed by Section 811.021, Florida Statutes 1961, F.S.A., hence this appeal.
The information charged, in substance, that Silver, with intent to deprive and defraud one John Henry Johnson of his property, of the value of more than $100.00, unlawfully obtained Johnson's signature to a mortgage deed and promissory note, the false making whereof would be punishable as forgery under the laws of Florida.
Appellant's brief frames and argues six points of law upon which he relies for reversal, in brief:
1. That Section 811.021, Florida Statutes 1961, F.S.A., as it relates to the crime charged, violates Section 12, Declaration of Rights, Constitution of Florida, F.S.A., and Amendment XIV, Constitution of the United States, in that it fails to clearly and definitely set a standard of guilt.
2. That said phase of the statute is constitutionally infirm for failure to clearly and definitely establish "a rational relationship between the crime and the punishment provided for therein."
3. That it was prejudicial error to deny appellant's motion to strike all evidence of the state relating to the value of the work performed by appellant in consideration of the note and mortgage signed by the prosecuting witness.
4. That the evidence is insufficient to support the verdict of guilty.
5. That it was prejudicial error to exclude from evidence a newspaper subscription signed by the prosecuting witness.
6. That the court erred in failing, of its own motion, to instruct the jury as to petit larceny.
We note, at the outset, that counsel for appellant has failed to specify in conjunction with the respective points of law argued, the particular assignments of error that give rise thereto, as required by Florida Appellate Rule 3.7(f)(4), 31 F.S.A.. We often indulge such violations when committed by laymen appearing in proper person, but for obvious reasons the professional pleader is not entitled to such compassion. His appearance as counsel implies familiarity with and a compact to comply with the rules of appellate practice and procedure. Although we refrain from imposing any penalty in this instance, it must be understood that we do expect full compliance with the rules and that this forbearance is not to be taken as precedent for future violations.
The purpose of the rule and the disruptive effect of its violation is typified in this case. It is seen that the first two points of law involved are addressed to matters touching upon the constitutionality of a part of F.S. § 811.021, F.S.A. Because of the briefer's failure to identify the applicable assignments of error, it became necessary for the appellee to ferret out of the trial record the transactions upon which appellant presumably relied as a predicate *93 for said points of law and become advised of the fact that the constitutional question (a) was never presented in the trial court and (b) first appeared in the guise of an assignment of error on this appeal.
Assignments of error should designate identified judicial acts in the order of occurrence (Florida Appellate Rule 3.5 [c]) and generally will not be considered unless based on the record on appeal (Florida Appellate Rule 3.3). State v. Brown, 118 So.2d 574 (Fla.App. 1960); Everett v. State, 97 So.2d 241 (Fla. 1957); McRainey v. Langston, 92 Fla. 903, 110 So. 536 (1926); Caldwell v. People's Bank, 73 Fla. 1165, 75 So. 848 (1917); Daly v. State, 67 Fla. 1, 64 So. 358 (1914). An exception is found where the fundamental rights of a litigant are involved. In civil cases the Florida Supreme Court has considered the constitutionality of the controlling statute. Town of Monticello v. Finlayson, 156 Fla. 568, 23 So.2d 843, 845 (1945); Parker v. Town of Callahan, 115 Fla. 266, 156 So. 334, 336 (1933). It is axiomatic that the exception should be applied in cases involving the personal liberty of the individual, and it is on that basis that we accept the responsibility of considering the constitutional issues presented.
We find no merit in appellant's challenge of the constitutionality of F.S. § 811.021, F.S.A., as it relates to the crime charged. The statute clearly defines one of the inhibited forms of larceny as the act of obtaining the signature of any person to a written instrument, the false making whereof would be punishable as forgery, with intent to deprive or defraud the true owner of his property or the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person. If the subject property is of the value of $100.00 or more, the offense is defined as grand larceny, and if of less than that value as petit larceny. The offense of larceny as here charged is a species of obtaining property by false pretenses and is based on the act of obtaining the rightful owner's signature to an instrument the false making whereof would constitute forgery, with unlawful intent as aforesaid. The wrongful appropriation of property as thus contemplated is related to common law larceny as developed by the English courts and acts of Parliament which were imported into this country; more specifically to larceny by trick, in which the wrongdoer gains possession of the property of another through a consent that was fraudulently obtained. Rex v. Pear, 1 Leach 212, 168 Eng.Rep. 208; 6 Harv.L.Rev. at p. 248 (1892).
In the case of Rosengarten v. State of Florida, 171 So.2d 591 (District Court of Appeal, Second District, State of Florida, 1965), Smith, J., speaking for the court, made a learned analysis of the so-called "Consolidated Larceny Statute," 9 U.Fla.L. Rev. 209 (1956). In that case, as here, the court was dealing with the effect of the statute in its relation to the former crime of obtaining property by false pretenses, which has been merged as one of the theft offenses covered by F.S. § 811.021, F.S.A. It would be presumptuous to attempt to elaborate upon the principles of law enunciated in that opinion which clearly delineates the application of our statute to charges involving the taking of property of another by means of false pretenses.
Anglin v. Mayo, 88 So.2d 918 (Fla. 1956), establishes that Chapter 26912, Laws of Florida, 1951, now cited as Section 811.021, superseded prior Section 817.01, Florida Statutes, F.S.A., defining the crime of obtaining property by false pretenses, which read in part as follows:
"Whoever designedly by a false pretense, or by a privy or false token, and with intent to defraud, obtains from another person any property, or obtains with such intent the signature of any person to a written instrument, the false making whereof would be punishable as forgery, shall be punished by imprisonment in the state prison not exceeding ten years, or by fine not exceeding five hundred dollars."
*94 A comparison of F.S. § 811.021, F.S.A. with the former statute reveals that both statutes define in substantially the same language the crime of which appellant stands convicted. In Anglin v. Mayo, supra, the Florida Supreme Court quoted with approval the following excerpt from the reported opinion of the Circuit Judge in Thomason v. American Fire & Casualty Co., 5 Fla. Supp. 129:
"The real purpose of the statute was to eliminate technical distinctions between the offenses of larceny, embezzlement and obtaining money under false pretenses. Prior to the enactment thereof in 1951 it was not uncommon for a criminal prosecution to become confused and sometimes result in a miscarriage of justice because of the fine line of demarcation between these offenses as they had previously been defined by the legislature and the courts. The history of the times and of the particular legislation involved clearly indicates that the intent of the legislature was to eliminate this confusion and to simplify prosecutions involving the wrongful and criminal acquisition by one person of the property of another."
Appellant also insists that the court committed reversible error in refusing to grant his motion to strike all evidence of the state touching upon the value of the work done and materials furnished by appellant upon the prosecuting witness's premises. The transaction incident to which the alleged offense occurred involved a proposal of the appellant, originally made by his agent and later participated in by him, for certain repairs to be made by appellant upon a dwelling owned by the prosecuting witness, an aged negro who lived alone and who, according to his testimony, was able to sign his name but was unable to read or write. He testified that the promissory note and mortgage to which he subscribed his name was represented to him by appellant's agent to be a receipt evidencing the work done or to be done on the premises and the state's evidence is to the effect that the repairs had a value not in excess of $175.00. It developed, however, that the instruments actually signed were a promissory note for $1,795.00 and a mortgage on his home purporting to secure the same; and the evidence is readily susceptible of the conclusion that appellant with knowledge of the stated background undertook to enforce the same according to their tenor and effect.
As criminal intent, active or imputed, is an essential element of the crime charged, it was necessary for the state to establish that the signature of John Henry Johnson was obtained in furtherance of an unlawful design to fraudulently deprive him of his property. That element is to be found, if at all, in the light of the material facts and circumstances in a particular case. In this case the subject of the value of the work done had a direct bearing and relevancy upon the credibility of Johnson's testimony to the effect that he signed the allegedly spurious promissory note and mortgage in the belief, induced by the representation of appellant's agent, that he was only signing a receipt indicating the work done or to be done on his residence. The state also produced evidence tending to establish that the appellant, with knowledge of said facts, sought in the guise of a holder in due course, for value, to assert said promissory note and mortgage according to its terms.
Appellant's motion to strike all of the state's evidence touching upon value of the services performed and materials furnished for repairs on Johnson's house was not made until the court, in the course of appellant's proofs in rebuttal of the state's case, had refused to admit in evidence an instrument in the nature of a self-serving declaration, prepared long after the note and mortgage were signed, purporting to be an arrangement by which the principal of the subject promissory note was reduced from $1,795.00 to $700.00. We note that this ruling does not form the subject of an assignment of error and that prior to that time the appellant had made no objection to *95 the testimony sought to be stricken, had extensively cross-examined the prosecuting witness in respect thereto, and, indeed, had presented evidence designed to rebut that phase of the state's case. It is apparent that throughout the trial it was the theory of the defense that the subject note and mortgage were given as such to evidence a lawful transaction in which the complaining witness, Johnson, received adequate consideration.
It is fundamental that a negotiable instrument in the hands of a holder in due course, for value, is enforceable strictly according to its terms. It follows, in a prosecution for the crime here involved, that if the signature to such an instrument is unlawfully obtained, the face amount of the instrument, the amount payable according to its terms, is its value to the person from whom it is stolen, and this circumstance controls the question of whether the verdict of guilty encompasses the crime of grand or petit larceny. As noted, criminal intent is a necessary element of the crime charged. Evidence of the value of a related transaction between the accused and the party defrauded (in this case the repairs to Johnson's house) as an incident to which the signature was obtained, was admissible in support of the element of criminal intent. Once the elements of statutory larceny are established, it is the actual or potential loss to the party defrauded that determines whether the accused has committed grand or petit larceny as defined by the statute. We find the evidence in this case ample to support the conclusion, inherent in the verdict of the jury, that the subject note and mortgage had a value in excess of $100.00. Indeed, it is susceptible of no other conclusion. The court did not err in denying appellant's motion to strike.
There is ample evidence to support the verdict and so appellant's motion for a directed verdict of acquittal was properly denied.
We find no error in the court's refusal to admit in evidence a newspaper subscription signed by the prosecuting witness, John Henry Johnson, which was offered by the appellant for the stated purpose of impeaching Johnson's testimony to the effect that he could not read or write. The subscription was dated approximately sixteen months after the alleged theft was perpetrated. There was no testimony indicating that Johnson could in fact read the subscription or any newspaper that might have been delivered pursuant thereto. The proffered exhibit is incompetent and irrelevant to serve the intended purpose. The mere subscription, signed by the witness long after the alleged crime was committed, was incompetent to establish that Johnson was capable of reading any newspaper coming into his hands on or after the subscription date, much less that he was capable of reading a newspaper at the time the crime was committed, and so the court did not err in excluding it from evidence.
The appellant, relying on the authority of Allison v. State, 162 So.2d 922 (Fla.App. 1964), Jimenez v. State, 158 Fla. 719, 30 So.2d 292 (1947), and McKenna v. State, 119 Fla. 576, 161 So. 561 (1935), insists that the court erred in failing of its own motion to instruct the jury with regard to petit larceny. Appellant concedes that he did not request such instruction or object to the charges actually given. Having determined that the evidence herein is susceptible of no conclusion other than that the value of the promissory note signed by the prosecuting witness was in excess of $100.00, it is apparent that the jury could not with propriety have found the appellant guilty of petit larceny. To hold otherwise would permit the jury to usurp the legislative function by using its verdict as a vehicle by which to reduce the sentence to less than the minimum prescribed by the legislature for the crime committed, and also to usurp the judicial function by depriving the court of the power to impose a sentence within the limits prescribed by the statute for such crime. It is axiomatic that the trial court should not be required to perform a useless act, as would be the *96 case if compelled of its own motion to charge the jury with respect to a crime which under no aspect of the evidence is shown to have been committed. Appellant's contention must be rejected on the authority of Brown v. State, 124 So.2d 481 (Fla. 1960). In that case the Florida Supreme Court accepted certiorari to review a decision of the Florida Second District Court of Appeal (State v. Brown, 118 So.2d 574) reversing an order of the trial court which granted a new trial to Brown (found guilty of murder in the second degree) on the ground that it erred in failing of its own motion to instruct the jury on third degree murder, notwithstanding the fact that no evidence had been presented as to such crime and no request made by Brown for such instruction. In discharging the writ of certiorari, the supreme court, speaking through Thornal, J., held that in any trial for first degree murder the accused is entitled to have the jury instructed on all degrees of homicide, including manslaughter, if he requests such an instruction, but further held that
"* * * if the accused fails to request such an instruction or fails by timely objection to bring to the attention of the trial judge an error in any such instruction given he cannot urge the error for the first time on appeal. Section 918.10(4), Florida Statutes, F.S.A."
Mr. Justice Drew filed a dissent in Brown v. State, in which he expressed the view that the trial court committed reversible error in failing of its own motion to charge the jury on third degree murder. The quoted holding of the majority specifically applies to the case on review in that (1) the evidence taken in the light most favorable to the defendant-appellant bore no relevance to the lesser crime of petit larceny, and (2) appellant did not request that the jury be charged with petit larceny.
In Jefferson v. State, 128 So.2d 132 (Fla. 1961), the supreme court affirmed a judgment of murder in the first degree and sentence of death in a case where the trial judge advised the jury that murder in the second and third degrees was not applicable under the facts and did not charge on said degrees of murder, Mr. Justice Drew again dissenting. In the later case of Johnson v. State, 130 So.2d 599 (Fla. 1961), Justice Drew, specially concurring in an affirmance of the trial court, noted the fact that the jury had not been instructed on murder in the third degree, but stood with the majority in deference to the holdings in the Brown and Jefferson cases.
The authorities relied on by appellant in support of his contention that the trial court erred in failing of its own motion to charge the jury on petit larceny are not in point, as well as unsound in the light of our previous discussion. In McKenna v. State, supra, appellant was charged with having stolen 40 boxes of grapefruit of a value exceeding $50.00, which at that time constituted grand larceny. In reversing for failure of the trial court sua sponte to charge the jury with petit larceny, our supreme court pointed out that "[t]he evidence as to the value of the property was unsatisfactory and conflicting," and that there was substantial evidence from which the jury could have concluded that the value of the subject property was less than the amount necessary to constitute grand larceny. The factual situation, therefore, is markedly different from that in the case on review where, as we have said, the evidence, taken in the light most favorable to appellant, is not susceptible of a finding of guilty of petit larceny.
In Jimenez v. State, supra, decided in 1947, the Florida Supreme Court sustained a conviction for rape. Appellant contended, inter alia, that the court erred by instructing the jury as to the lesser and included offenses. The supreme court rejected that contention.
In Allison v. State, supra, the appellant was convicted of assault with intent to commit rape. The evidence was such that had the jury been properly charged it *97 might have returned a verdict of guilty to a lesser crime. His request for instructions as to the lesser included crimes was denied. Carroll, J., speaking for this court, pointed out that simple assault, assault and battery, and aggravated assault were lesser included offenses and we reversed for failure to charge thereon. The critical distinctions between that case and the case on review are (1) that an instruction covering the lesser crimes was requested, and (2) that the evidence was such that one or more of the lesser crimes was necessarily embodied in the crime of which appellant was found guilty.
Finding no error, the judgment appealed is
Affirmed.
RAWLS, J., and PATTEN, Associate Judge, concur.